**GIRARD SHARP LLP**
Adam E. Polk (SBN 273000)
Jordan Elias (SBN 228731)
Simon S. Grille (SBN 294914)
Jordan Isern (SBN 343159)
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com
jisern@girardsharp.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY PENIRD, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>LOANDEPOT, INC.,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Amy Penird ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against loanDepot, Inc. ("Defendant" or "loanDepot"), and alleges as follows:

## I.   INTRODUCTION

1.      This action concerns loanDepot's failure to secure the sensitive personal information of more than 16.6 million of its customers. A nonbank holding company, loanDepot sells mortgage and non-mortgage lending services. In connection with providing these services, loanDepot obtains certain personally identifying information of its customers, who include borrowers as well as loan applicants.

2.      loanDepot failed to properly secure and safeguard confidential information of its customers, which they submitted with loan applications. On January 8, 2024, loanDepot announced that the PII of potentially 16.6 million of its customers had been breached and exfiltrated (the "Data Breach"). Though loanDepot has not yet disclosed the type of personally identifiable information compromised in the Breach, considering loanDepot's services, the information likely includes name, address, date of birth, social security number, employment-related information, driver's license number, phone number, email address, credit score, financial information, and account access information, such as username and password (individually and collectively, "PII").

3.      In reporting the Data Breach, loanDepot stated that it had "determined that unauthorized third party activity included access to certain Company systems and the encryption of data."[1] loanDepot disclosed the breach on its website and to the U.S. Securities and Exchange Commission ("SEC"), without stating when the breach occurred. As of this filing, loanDepot has not individually notified potentially impacted customers. loanDepot has not informed affected individuals of the extent, date, duration, or nature of the breach, including the types of PII stolen, how customers should respond,

---

[1]
https://www.sec.gov/ix?doc=/Archives/edgar/data/0001831631/000183163124000004/ldi-20240104.htm (last accessed Jan. 23, 2024).

CLASS ACTION COMPLAINT
CASE NO.

any toll-free numbers they can call, or whether loanDepot would provide any identity theft prevention and mitigation services.

4.      As a result of the breach, the PII of the millions of impacted individuals been compromised and can be sold for improper use on the dark web, a black market for exposed personal information. loanDepot's customers face a lifetime risk of identity theft—a present and ongoing threat heightened by the loss of their social security numbers. Following the breach, loanDepot customers also report they have struggled to access their account information, submit loan payments, and close real estate transactions.

5.      Until learning of the Data Breach from external sources, Plaintiff was unaware that her PII had been compromised, subjecting her to a significant risk of identity theft and various other forms of personal, social, and financial harm. Without notice, moreover, numerous victims of the breach remain unaware of it and consequently have not taken necessary steps to protect themselves, such as purchasing a credit freeze.

6.      loanDepot publicly states it will protect the privacy of its customers and maintain security measures to protect their information from unauthorized disclosure.[2] Yet, in reckless disregard of the rights of Plaintiff and Class Members, loanDepot failed to implement adequate and reasonable measures to ensure that its customers' PII was safeguarded and failed to take appropriate steps to prevent an unauthorized disclosure of data. Consequently, the PII of Plaintiff and Class Members was compromised and exfiltrated by an unknown and unauthorized third party. loanDepot's conduct in failing to secure its systems constitutes negligence, invasion of privacy, and a violation of state consumer protection and privacy statutes.

7.      Plaintiff brings this action on behalf of all persons whose PII was compromised in the Data Breach. Plaintiff seeks compensatory damages together with injunctive relief to remediate loanDepot's failure to secure her and other Class Members'

---

[2] *See* https://www.loandepot.com/privacypolicy (last accessed Jan. 23, 2024).

CLASS ACTION COMPLAINT
CASE NO.

1    PII, and requiring loanDepot to provide credit monitoring, identity theft insurance, and
2    credit repair services to protect the Class Members from identity theft and fraud.

**II.    PARTIES**

3        8.      Plaintiff Penird is a citizen of the State of Florida and resides in Hernando,
4
5    Florida.

6        9.      Defendant loanDepot, Inc. is a Delaware company with its principal place of
7    business at 6561 Irvine Center Drive, Irvine, California, 92618.

8        10.     loanDepot is the third-largest private, independent retail mortgage and
9    residential lender in the United States. loanDepot currently has over 700 licensed loan
10   officers serving in all fifty states.

11       11.     loanDepot does business throughout California and the entire United States.

**III.   JURISDICTION AND VENUE**

12
13       12.     This Court has jurisdiction under 28 U.S.C. § 1332(d)(2) because this is a
14   class action involving more than 100 Class Members and because the amount in
15   controversy exceeds $5,000,000, exclusive of interest and costs. In addition, Plaintiff,
16   numerous other Class Members, and loanDepot are citizens of different states.

17       13.     This Court has personal jurisdiction over loanDepot because loanDepot is
18   headquartered in California, and loanDepot purposefully availed itself of the laws and
19   benefits of doing business in California, and Plaintiff's claims arise out of loanDepot's
20   forum-related activities. Furthermore, a substantial portion of the events giving rise to
21   Plaintiff's claims occurred in this District.

22       14.     loanDepot's Terms of Use state that, "any dispute related to [its Terms of
23   Use] or [its website] shall be governed by and construed in accordance with the laws of
24   California[.]"[3]

25       15.     Venue is proper in this District under 28 U.S.C. §§ 1391(a)(1), 1391(b)(1),
26   1391(b)(2), and 1391(c)(2). A substantial part of the events giving rise to the claims

27
28
_____

[3] https://www.loandepot.com/termsofuse (last accessed Jan. 23, 2024).

---

3

CLASS ACTION COMPLAINT
CASE NO.

emanated from activities within this District, and loanDepot resides, is headquartered, and conducts substantial business in this District.

## IV.   FACTUAL ALLEGATIONS

### *Background*

16.    loanDepot offers a variety of financial services including mortgages, refinancing loans, home equity loans, and credit monitoring.

17.    loanDepot is one of the nation's largest independent retail mortgage and residential lending companies.[4] loanDepot states that its "nationwide team of 6,000-plus members assists more than 27,000 customers each month."[5] It further states that it delivers a "digital mortgage experience that enables [customers] to be served quickly and easily," and that it can "seamlessly and securely collect [customers'] income, employment and asset information" to "ensure that [customers'] transactions . . . are fast, straightforward and hassle-free."[6]

18.    Plaintiff and Class Members sought loan services from loanDepot. As part of the loan application process, they were required to entrust loanDepot with some of their most sensitive and confidential information, including, without limitation: name, address, date of birth, social security number, employment-related information, driver's license number, health and medical information, criminal history, phone number, email address, credit score, and other financial information.[7]

19.    Some of the PII that Plaintiff entrusted to loanDepot, such as her social security number, is effectively unchangeable and can be used to commit myriad financial crimes.

---

[4] https://www.prnewswire.com/news-releases/loandepot-ranks-third-by-units-among-largest-mortgage-lenders-in-america-according-to-2022-hmda-data-301799387.html (last accessed Jan. 23, 2024).

[5] https://www.loandepot.com/about (last accessed Jan. 23, 2024).

[6] *Id.*

[7] *See* https://www.loandepot.com/privacypolicy (last accessed Jan. 23, 2024).

CLASS ACTION COMPLAINT
CASE NO.

20.     In providing services to Plaintiff and Class Members, loanDepot and/or its subsidiaries obtained and stored their sensitive personal information.

21.     Plaintiff and Class Members, as customers of loanDepot, relied on loanDepot to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Reasonable data security measures are necessary to safeguard the PII of loanDepot's customers in its possession.

22.     loanDepot operated under a continuous duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII from involuntary disclosure to a third party.

***The Privacy Policy***

23.     loanDepot has a Privacy Policy on its website, which states in part:

•       We have adopted policies and procedures designed to protect your personally identifiable information from unauthorized use or disclosure.

•       We have implemented physical, electronic, and procedural safeguards to maintain confidentiality and integrity of the personal information in our possession and to guard against unauthorized access. These include among other things, procedures for controlling access to your files, building security programs and information technology security measures such as the use of passwords, firewalls, virus prevention and use detection software.

•       We continue to assess new technology as it becomes available and to upgrade our physical and electronic security systems as appropriate.

•       Our policy is to permit employees to access your personal information only if they have a business purpose for

CLASS ACTION COMPLAINT
CASE NO.

using such information, such as administering, providing or developing our products or services.

- Our policy, which governs the conduct of all of our employees, requires all employees to safeguard personally identifiable information about the consumers and customers we serve or have served in the past.[8]

24. With respect to third party access, the Privacy Policy provides a list of instances in which PII may be disclosed to third parties without prior written authorization—none of which is applicable here.[9]

25. With respect to data retention, the Privacy Policy states that loanDepot retains *all* customer information "for as long as [the customers' account is active or as needed to provide [customers with] services."[10]

### *The Data Breach*

26. On or around January 6 to January 7, 2024, an intruder gained unauthorized access to loanDepot's systems and stole the PII of over 16.6 million loanDepot customers.[11] On or around January 8, 2024, loanDepot began its investigation of this intrusion and notified the SEC.[12] In announcing the breach, loanDepot stated:

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] https://www.ocregister.com/2024/01/17/loandepot-customers-struggle-to-make-mortgage-payments-after-irvine-lender-hacked/ (last accessed Jan. 23, 2024); https://www.sec.gov/ix?doc=/Archives/edgar/data/0001831631/000183163124000004/ldi-20240104.htm (last accessed Jan. 23, 2024); https://www.bleepingcomputer.com/news/security/loandepot-cyberattack-causes-data-breach-for-166-million-people/ (last accessed Jan. 23, 2024).

[12] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001831631/000183163124000004/ldi-20240104.htm (last accessed Jan. 23, 2024).

CLASS ACTION COMPLAINT
CASE NO.

loanDepot, Inc. (the "Company") recently identified a cybersecurity incident affecting certain of the Company's systems. Upon detecting unauthorized activity, the Company promptly took steps to contain and respond to the incident, including launching an investigation with assistance from leading cybersecurity experts, and began the process of notifying applicable regulators and law enforcement.

Though our investigation is ongoing, at this time, the Company has determined that the unauthorized third party activity included access to certain Company systems and the encryption of data. In response, the Company shut down certain systems and continues to implement measures to secure its business operations, bring systems back online and respond to the incident.

The Company will continue to assess the impact of the incident and whether the incident may have a material impact on the Company.[13]

27. As of the filing of this Complaint, loanDepot has not individually notified its customers of the Data Breach. Nor has loanDepot notified regulatory authorities other than the SEC, or updated the SEC regarding the Data Breach since its initial notice.

28. loanDepot admits that unauthorized third persons accessed sensitive information about its customers, reportedly in a ransomware attack.[14]

29. Because it was exposed in the Data Breach, Plaintiff and Class Members' information can now be placed on the dark web for sale, and/or may fall into the hands of actors that will use Plaintiff's PII for illicit purposes. Unauthorized individuals and

---

[13] *Id.*

[14] https://techcrunch.com/2024/01/08/loandepot-outage-suspected-ransomware-attack/ (last accessed Jan. 25, 2024).

CLASS ACTION COMPLAINT
CASE NO.

cybercriminal groups can readily access the PII of loanDepot's customers now that it has been exfiltrated.

30.     loanDepot did not use reasonable security procedures and practices suitable or adequate to protect the sensitive information of customers it was maintaining, causing the unauthorized exfiltration of the PII of more than 16.6 million individuals.

### *loanDepot Acquires, Collects and Stores Plaintiff's and Class Members' PII*

31.     loanDepot acquired, collected, and stored the PII of its customers.

32.     As a condition of doing business with loanDepot, loanDepot requires that its customers entrust loanDepot with highly confidential PII.

33.     By obtaining, collecting, and storing Plaintiff's and Class Members' PII, loanDepot assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure. The risk of criminal hacking of its systems is well known to loanDepot, particularly given the sensitive PII it maintains.

34.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class Members, as loanDepot customers, relied on loanDepot to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### *Securing PII and Preventing Foreseeable Data Breaches*

35.     loanDepot could have reasonably prevented this Data Breach by properly securing Plaintiff and Class Members' PII. Additionally, loanDepot could—but did not—destroy PII that it no longer needed to retain or was required to destroy.

36.     loanDepot's negligence in failing to safeguard its customers' PII is exacerbated by the repeated news about data breaches and ransomware attacks on similar

CLASS ACTION COMPLAINT
CASE NO.

financial services companies.[15] loanDepot had clear advance notice of the urgent need to protect and secure sensitive, financial, and other data in its systems.

37.     In August 2022, loanDepot itself was subject to a data breach that impacted its customers' internal accounts.[16] In that breach, like the Data Breach at issue in this action, a third party was able to access and take customers' PII, including social security numbers.[17]

38.     Despite knowing it is a target for data breaches, loanDepot failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

39.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[18]

40.     The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[19]

41.     The ramifications of loanDepot's failure to keep its customers' PII secure are long lasting and severe. Once social security numbers and other PII have been stolen,

---

[15] https://www.forbes.com/advisor/mortgages/loan-depot-mortgage-attack-data-breach/ (last accessed Jan. 23, 2024).

[16] file:///Users/jordanisern/Downloads/EXPERIAN_Job41809d14_LoanDepot_ALL_SAS_0%20(1).pdf (last accessed Jan. 24, 2024).

[17] Id.

[18] 17 C.F.R. § 248.201 (2013).

[19] Id.

CLASS ACTION COMPLAINT
CASE NO.

fraudulent use of that information and resulting damage to victims may continue for years.

***Value of Personal Identifiable Information, Including Social Security Numbers***

42.     The PII of individuals is of high value to criminals, as evidenced by the prices they will pay for it on the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details command a price range of $50 to $200.[20] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[21] Criminals also can purchase access to entire sets of information obtained from company data breaches—such as the hack at issue in this case—at a price of $900 to $4,500.[22]

43.     Social security numbers are among the most sensitive kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's social security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number

---

[20] https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Jan. 24, 2024).

[21] https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Jan. 24, 2024).

[22] https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Jan. 24, 2024).

CLASS ACTION COMPLAINT
CASE NO.

until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[23]

44.     Further, it is no easy task to change or cancel a stolen social security number. An individual cannot obtain a new social security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against potential misuse of a social security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.

45.     Even then, a new social security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[24]

46.     Thus, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, in that situation, victims can simply cancel or close credit and debit card accounts. By contrast, the information compromised in this Data Breach is impossible to "close" and extremely difficult, if not impossible, to change: name, birthdate, financial history, and social security number.

47.     A social security number, moreover, commands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained,

---

[23] https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Jan. 24, 2024).

[24] https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last accessed Jan. 24, 2024).

CLASS ACTION COMPLAINT
CASE NO.

"Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[25]

***Plaintiff and Class Members Were Injured***

48.     Plaintiff and Class Members have suffered actual and imminent injuries as a result of the Data Breach, including: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to loanDepot with the mutual understanding that loanDepot would safeguard their PII against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their PII, which remains in the possession of loanDepot, and which is subject to further breaches so long as loanDepot fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

49.     The injuries to Plaintiff and Class Members were directly and proximately caused by loanDepot's failure to implement or maintain adequate data security measures for the PII of its customers. At all relevant times, loanDepot knew, or reasonably should have known, of the critical importance of safeguarding its customers' PII, including social security numbers and personal and financial information, and of the foreseeable consequences that would occur if its electronic systems were breached, including, specifically, the significant costs that would be imposed on its customers as a result of such an intrusion. loanDepot also knew, or reasonably should have known, of the unique

---

[25] https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Jan. 24, 2024).

CLASS ACTION COMPLAINT
CASE NO.

type and the significant volume of data on loanDepot's network, which included millions of individuals' detailed and confidential personal information, and, thus, the very large number of individuals who would be harmed by the exposure of this sensitive data.

50. The PII of Plaintiff and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who will purchase the PII for that improper purpose. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

51. The fraudulent activity resulting from the Data Breach may not come to light for years. There also may be a time lag between when harm occurs and when the victim discovers it, as well as between when PII is stolen or sold and when it is misused. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

52. Plaintiff and Class Members now face years of needing to continuously monitor their financial and personal records. The Class is incurring and will continue to incur such damage, including valuable lost time, in addition to any fraudulent use of their PII.

---

[26] http://www.gao.gov/new.items/d07737.pdf (last accessed Jan. 24, 2024).

CLASS ACTION COMPLAINT
CASE NO.

***Plaintiff Amy Penird's Experience***

53.     Plaintiff Penird applied for a home loan with loanDepot in approximately 2021. As a condition of receiving services from loanDepot, Plaintiff provided her PII with her loan application. The PII was then entered into loanDepot's database and maintained by loanDepot.

54.     Plaintiff greatly values her privacy and PII, especially when receiving loan and financial services. Prior to the Data Breach, she took reasonable steps to maintain the confidentiality of her PII.

55.     Plaintiff stores any documents containing her PII in a safe and secure location or destroys the documents. She is very careful about sharing her PII, and diligently chooses unique usernames and passwords periodically for her various online accounts. Plaintiff has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

56.     Plaintiff has not received notice of the Data Breach from loanDepot but is aware of the Data Breach through other sources.

57.     Plaintiff has experienced an increase of other spam calls, text messages and emails after the Data Breach. Since learning of the Data Breach, Plaintiff also has spent time researching the Data Breach and steps she can take to protect herself.

58.     The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress.

59.     Plaintiff plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing her depository, credit, and other accounts for any unauthorized activity.

60.     Plaintiff, like the other Class Members, has a strong and continuing interest in ensuring that her PII, which remains in loanDepot's possession, is secured against future breaches.

## V.     CLASS ALLEGATIONS

61.     Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and/or 23(c)(4), Plaintiff brings this case as a class action on behalf of herself and a Class of all

CLASS ACTION COMPLAINT
CASE NO.

individuals in the United States whose PII was accessed or exfiltrated during the Data Breach of loanDepot, Inc. reported in January 2024.

62.     Excluded from the Class are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, and any entity in which it has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

63.     Plaintiff reserves the right to modify or amend the class definition before the Court determines whether certification is appropriate.

64.     **Numerosity.** Consistent with Fed. R. Civ. P. 23(a)(1), the Class Members are so numerous that their joinder is impracticable. While the exact number of Class Members is unknown, upon information and belief, the Class includes approximately 16.6 million people. The number and identities of Class Members can be readily ascertained using Defendant's records.

65.     **Commonality.** Consistent with Fed. R. Civ. P. 23(a)(2) and (b)(3), questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

a.     Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

b.     Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

c.     Whether Defendant had duties not to disclose the PII of Plaintiff and Class Members, respectively, to unauthorized third parties;

d.     Whether Defendant had a duty not to use the PII of Plaintiff and Class Members for non-business purposes;

e.   When Defendant learned of the Data Breach;

f.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.   Whether Defendant committed violations by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h.   Whether Defendant failed to implement and maintain reasonable security procedures and practices adequate to protect the information compromised in the Data Breach, considering its nature and scope;

i.   Whether Defendant has adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.   Whether Defendant engaged in unfair, unlawful, or deceptive practices, including by failing to safeguard the PII of Plaintiff and Class Members;

k.   Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages or restitution as a result of Defendant's wrongful conduct, and if so, in what amount; and

l.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm that they confront as a result of the Data Breach.

66.   **Typicality.** Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of those of other Class Members because they all had their PII compromised as a result of the Data Breach, due to Defendant's wrongful conduct, and their claims arise under the same legal doctrines.

67.   **Adequacy of Representation.** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interest and seeks no relief that is antagonistic or adverse to any other Class Member. She has retained counsel experienced in complex class action litigation, including data privacy cases, who intend to prosecute this action vigorously.

CLASS ACTION COMPLAINT
CASE NO.

68.     **Superiority and Manageability.** Consistent with Fed. R. Civ. P. 23(b)(3), class treatment is superior to all other available methods for the fair and efficient adjudication of this controversy. A class action will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Moreover, class action treatment will permit the adjudication of relatively modest claims by Class Members who could not individually afford to litigate a complex claim against a large corporation such as Defendant. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

69.     **Generally Applicable Conduct.** As provided under Fed. R. Civ. P. 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct in relation to the Class and making final injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly, and Plaintiff challenges these policies by reference to Defendant's conduct with respect to the Class as a whole.

70.     Particular issues, such as questions related to Defendant's liability, also are appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the resolution of such common issues will materially advance the resolution of this matter and the parties' interests therein.

71.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1), in that the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. Prosecution of separate actions by Class Members also would create the risk of adjudications with respect to

individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

## COUNT I

### Negligence

### (On Behalf of Plaintiff and the Class)

72.    Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

73.    Plaintiff brings this claim pursuant to California law.

74.    loanDepot's Terms of Service include a choice-of-law provision providing that California law applies to any dispute related to the customer's relationship with loanDepot. This choice of law clause applies to this dispute because Plaintiff and Class Members provided their PII, which loanDepot's negligently failed to safeguard, in connection with applying for a loan that was subject to its Terms of Service.

75.    As a condition of applying for and receiving their loans from Defendant and its subsidiaries, Defendant's customers were obligated to provide and entrust Defendant with certain PII, including (without limitation) their name, employment related information, driver's license number, health and medical information, criminal history, phone number, email address, credit score, address, date of birth, social security number, and other financial information.

76.    Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

77.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed or obtained by unauthorized parties.

78.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of its customers' PII involved an

unreasonable risk of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

79.     Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and Class Members' information in Defendant's possession was adequately secured and protected.

80.     Defendant had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and the Class's PII, and to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and the Class.

81.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a mandatory step in obtaining services from Defendant.

82.     Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff and the Class, to maintain adequate data security.

83.     A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices and the sensitive personal information that it housed.

84.     Plaintiff and the Class were the foreseeable and probable victims of inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, and the critical importance of adequately safeguarding that PII.

85.     Defendant's conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's wrongful conduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's

misconduct also included its failure to comply with industry standards for the safekeeping of Plaintiff's and the Class's PII.

86.     Plaintiff and the Class had no ability to protect their PII to the extent it was in, and remains in, Defendant's possession.

87.     Defendant was in a position to effectively protect against the harm that Plaintiff and the Class sustained as a result of the Data Breach.

88.     Further, Defendant has a duty to adequately disclose that the PII of Plaintiff and the Class within Defendant's possession was compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

89.     Defendant has admitted that the PII of Plaintiff and the Class was wrongfully accessed by unauthorized third persons in the Data Breach.

90.     Defendant, through its actions and inaction, unlawfully breached its duties to Plaintiff and the Class by failing to implement standard protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Class when the PII was within Defendant's possession or control.

91.     Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

92.     Defendant failed to heed industry news, warnings, and alerts to provide adequate safeguards to protect its customers' PII in the face of increased risk of theft.

93.     Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to ensure appropriate procedures were in place to detect and prevent dissemination of its customers' PII.

94.     Defendant, through its actions and/or omissions, unlawfully breached its duties to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

CLASS ACTION COMPLAINT
CASE NO.

95.     But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII of Plaintiff and the Class would not have been compromised.

96.     There is a close causal connection between (a) Defendant's failure to implement security measures to protect the PII of Plaintiff and the Class and (b) the harm or risk of imminent harm suffered by Plaintiff and the Class. Plaintiff's and the Class's PII was accessed and exfiltrated as the direct and proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

97.     Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of businesses, such as Defendant, of failing to implement reasonable measures to protect PII. The FTC Act and related authorities form part of the basis of Defendant's duty in this regard.

98.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the damages that would result to Plaintiff and the Class.

99.     Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

100.     Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

101.     The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, due to their failure to employ reasonable data security measures and to avoid unfair and deceptive practices, caused the same or similar harm as that suffered by Plaintiff and the Class.

CLASS ACTION COMPLAINT
CASE NO.

102.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the customers' PII in its continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class Members.

103.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

104.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

105.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class are now at an increased risk of identity theft or fraud.

106.   As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## COUNT II

### Breach of Contract

### (On Behalf of Plaintiff and the Class)

107.   Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

108.   Plaintiff brings this claim pursuant to California law.

109.   Plaintiff and Class Members entered into a valid and enforceable contract through which they were required to provide their PII to loanDepot in exchange for services.

110.   The contract included promises by Defendant to protect, secure, and not to disclose Plaintiff and Class Members' PII to any third parties without their consent.

111.   loanDepot's promises and Plaintiff and Class Members rights and obligations, are memorialized in loanDepot's privacy policy, published on its website.[27] loanDepot's privacy policy is part of Plaintiff and Class Members' agreement for services with loanDepot.

112.   Plaintiff and Class Members fully performed their obligations pursuant to their contracts with loanDepot. But loanDepot failed to protect, secure, and/or keep private Plaintiff and Class Members' PII. Thus, loanDepot breached its contracts with Plaintiff and Class Members.

113.   As a direct and proximate result of loanDepot's breach of contract, Plaintiff and Class Members did not receive the full benefit of the bargain, and received financial services that were less valuable than described in their contracts.

---

[27] https://www.loandepot.com/privacypolicy (last accessed Jan. 23, 2024).

CLASS ACTION COMPLAINT
CASE NO.

114.   As a result of loanDepot's breach of contract, Plaintiff and Class Members have suffered actual damages resulting from the compromise of their PII, and they remain at imminent risk of additional damages in the future.

115.   Plaintiff and Class Members have been injured by Defendant's breach of contract and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT III

### Invasion of Privacy

### (On Behalf of Plaintiff and the Class)

116.   Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

117.   Plaintiff brings this claim pursuant to California law.

118.   Plaintiff and Class Members reasonably expected that the personal information they entrusted to Defendant, such as their names, social security numbers, addresses, dates of birth, and personal and financial information, would be kept private and secure, and would not be disclosed to any unauthorized third party or for any improper purpose.

119.   Defendant unlawfully invaded Plaintiff's and Class Members' privacy rights by:

a.     failing to adequately secure their personal information from disclosure to unauthorized third parties or for improper purposes;

b.     enabling the disclosure of personal and sensitive facts about them in a manner highly offensive to a reasonable person; and

c.     enabling the disclosure of personal and sensitive facts about them without their informed, voluntary, affirmative, and clear consent.

120.   A reasonable person would find it highly offensive that Defendant, having received, collected, and stored Plaintiff's and Class Members' full names, dates of birth, and social security numbers and other highly sensitive personal details, failed to protect that information from unauthorized disclosure to third parties.

CLASS ACTION COMPLAINT

CASE NO.

121.   In failing to adequately protect Plaintiff's and Class Members' personal information, Defendant acted knowingly and in reckless disregard of their privacy rights. Defendant knew or should have known that its ineffective security measures, and their foreseeable consequences, are highly offensive to a reasonable person in Plaintiff's position.

122.   The acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

123.   Defendant's unlawful invasions of privacy damaged Plaintiff and Class Members. As a direct and proximate result of Defendant's unlawful invasions of privacy, Plaintiff and Class Members suffered mental distress, and their reasonable expectations of privacy were frustrated and defeated. Accordingly, Plaintiff and Class Members are entitled to damages in an amount to be determined at trial.

<u>**COUNT IV**</u>

**Unfair and Unlawful Conduct in Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL")**

**(On Behalf of Plaintiff and the Class)**

124.   Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully set forth herein.

125.   The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

126.   loanDepot's Terms of Service include a choice-of-law provision providing that California law applies to any dispute related to the customer's relationship with loanDepot. This choice of law clause applies to this dispute because Plaintiff and Class Members provided their PII, which loanDepot's unlawfully failed to safeguard, in connection with applying for a loan that was subject to its Terms of Service.

127.   Additionally, while loanDepot does business nationwide, it is headquartered in California and a substantial number of Class Members are California residents.

Case 8:24-cv-00180-DOC-JDE   Document 1   Filed 01/25/24   Page 27 of 30   Page ID #:27

Moreover, the Data Breach occurred on loanDepot's electronic systems based in California. loanDepot manages and makes decisions about its cybersecurity practices which permitted the Data Breach from California.

128.   loanDepot's conduct is substantially unfair, predatory, and contrary to California's and the nation's legislatively declared public policy in favor of protecting the privacy and security of personal and confidential information. *See* S. Rep. No. 100-500 at 7-8 (1988) (finding that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems . . . create[s] privacy interests that directly affect the ability of people to express their opinions, to join in association with others, and to enjoy the freedom and independence that the Constitution was established to safeguard."); California Bill Analysis, A.B. 375 Assem. (June 27, 2021) (noting that "[t]he unregulated and unauthorized disclosure of personal information and the resulting loss of privacy can have devastating effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to the destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm.").

129.   loanDepot's unfair business acts and practices include:

     a.    failing to adequately secure the personal information of Plaintiff and Class Members from disclosure to unauthorized third parties or for improper purposes;

     b.    failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

     c.    enabling the disclosure of personal and sensitive facts about Plaintiff and Class Members in a manner highly offensive to a reasonable person;

     d.    enabling the disclosure of personal and sensitive facts about Plaintiff

CLASS ACTION COMPLAINT
CASE NO.

and Class Members without their informed, voluntary, affirmative, and clear consent;

e.     failing to adequately encrypt the PII of Plaintiff and Class Members;

f.     failing to delete the PII of Plaintiff and Class Members after it was no longer necessary to retain the PII;

g.     storing Plaintiff's and Class Members' PII in a manner that allowed hackers access to it, such as through internet-accessible environments, when such storage was unnecessary;

h.     continuing to accept and store PII after it knew or should have known of the Data Breach;

i.     unreasonably delaying in providing notice of the Data Breach and thereby preventing Plaintiff and Class Members from taking timely self-protection measures;

j.     failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach; and

k.     misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Class Members' Personal Information, including by implementing and maintaining reasonable security measures.

130.   The gravity of harm resulting from loanDepot's unfair conduct outweighs any potential utility. The failure to adequately safeguard personal, sensitive information harms the public at large and is part of a common and uniform course of wrongful conduct.

131.   The harm from loanDepot's conduct was not reasonably avoidable by consumers. The individuals affected by loanDepot were required to provide their PII as part of their relationship with Defendant. Plaintiff and Class Members did not know of, and had no reasonable means of discovering, that their information would be exposed to

hackers through inadequate data security measures.  Nor did any member of the Class have any means of preventing the Data Breach.

132.   There were reasonably available alternatives that would have furthered loanDepot's business interests of managing and storing consumer loan data, such as implementing best practices in cybersecurity defense.

133.   loanDepot's relevant conduct is also unlawful in violation of the UCL, including because it breached duties imposed by the FTC Act, 15 U.S.C. § 45.

134.   As a direct and proximate result of loanDepot's unlawful conduct, unfair methods of competition and unfair acts or practices, Plaintiff and Class Members lost money or property because their sensitive personal information experienced a diminution of value and because they paid out of pocket for credit monitoring, fraud alerts, or other identity theft protection services and devoted additional time—which they otherwise would or could have devoted to pecuniary gain—to expending additional time to monitor their credit reports and financial accounts for fraudulent activity.

135.   Plaintiff and Class Members accordingly seek relief under the UCL including, but not limited to, restitution to Plaintiff and Class Members of money or property that the Defendant acquired by means of their unfair business practices, restitutionary disgorgement of all profits accruing to Defendant because of their unfair business practices, declaratory relief, attorneys' fees and costs, and injunctive or other equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment against Defendant and respectfully requests that the Court grant the following relief:

A.      An Order certifying the Class as defined herein, and appointing Plaintiff and their counsel to represent the Class;

B.      Equitable relief, including but not limited to injunctive relief as is necessary to protect the interests and the PII of Plaintiff and Class Members;

C. An award of damages, including actual, consequential, and nominal damages, or restitution in an amount to be determined;

D. An award of reasonable attorneys' fees, costs, and litigation expenses, as allowed by law;

E. Prejudgment interest on all amounts awarded; and

F. Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all matters so triable.

Dated: January 25, 2024   Respectfully submitted,

          /s/ *Adam E. Polk*

          Adam E. Polk
          Jordan Elias
          Simon S. Grille
          Jordan Isern
          **GIRARD SHARP LLP**
          601 California Street, Suite 1400
          San Francisco, CA 94108
          Telephone: (415) 981-4800
          apolk@girardsharp.com
          jelias@girardsharp.com
          sgrille@girardsharp.com
          jisern@girardsharp.com

          *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT
CASE NO.